186 So.2d 851 (1966)
Frank A. CARUSO, Plaintiff-Appellant,
v.
AETNA INSURANCE COMPANY et al., Defendants-Appellees.
No. 6626.
Court of Appeal of Louisiana, First Circuit.
May 9, 1966.
Rehearing Denied June 14, 1966.
*852 A. J. Spedale, Calvin E. Hardin, Jr., of Durrett, Hardin, Hunter, Dameron & Fritchie, Ben W. Lightfoot, Baton Rouge, for appellant.
Robert L. Kleinpeter, of Kantrow, Spaht & Kleinpeter, Robert W. Smith, of Seale, Hayes, Smith & Baine, Daniel R. Atkinson, of Dale, Richardson & Dale, G. T. Owen, III, of Borron, Owen, Borron & Delahaye, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
BAILES, Judge.
In this tort action the plaintiff is seeking to recover special and general damages for injuries to his head and cervical spine sustained by him when he dived into shallow water of the swimming pool at the Continental Motor Hotel in the City of Baton Rouge on the night of July 16, 1961. Plaintiff brought this action against the Continental Hotel Corporation, owner of the swimming pool, and its insurer, Aetna Insurance Company; Scobee & Lewis, Inc., the general contractor who built the motor hotel, and its insurer, the United States Fidelity & Guaranty Company; and A. H. Wilson, d/b/a Southern Gunite Company, the sub-contractor who designed and constructed the swimming pool, and his insurers, Connecticut Fire Insurance Company and American Casualty Company of Reading, Pennsylvania.
On the evening and night of July 16, 1961, plaintiff and Mrs. Connie Thornton (now the plaintiff's wife) were co-hosts of a swimming party at the Continental Motor Hotel to which certain members of their respective families had been invited. In order to provide for a place to serve food and drink for the party, plaintiff and Mrs. Thornton secured the use of two ground level rooms near the pool. While the arrangement of the details of the party were attended to by Mrs. Thornton, the expense was to be shared between the hosts. The rooms were provided by the motel without charge but with the understanding it would cater the party. The point to be made is the arrangement for the rooms and the use of the swimming pool was a business transaction and not a gratuity between the parties.
The pool in which the accident occurred is 56 feet in length by a width from a *853 maximum of 36 feet to a minimum of 16 feet. There is a shallow end and a deep end. The depth of the shallow end is graduated from three to five feet, and the deep end has a minimum depth of five feet and a maximum depth of ten feet. A rope separates the shallow and deep ends, and to this rope buoys are attached. A diving board is provided for use of the patrons at the deep end. The pool is illuminated by two flood lights affixed to nearby buildings and there are at least two sub-surface pool lights. There were no depth markers whatever on the pool when this accident occurred. The plans for the construction of the pool provided for depth markers at one foot increments, and the swimming pool regulations of the State Department of Health provides for the installation of such markers.
At some time near 11:00 p. m., plaintiff, Mrs. Thornton and some of the guests decided to go swimming. Some of the other guests had already entered the pool. Mrs. Thornton entered the pool first, followed by plaintiff, each diving from the diving board. After swimming in the deep end of the pool for a few minutes, plaintiff left the pool by the ladder at the deep end. He walked along the side of the pool to a table adjacent to the shallow end where he remained for a few minutes talking to some of the guests. After the elapse of a few minutes, Mrs. Thornton called to plaintiff to come back in the pool. Plaintiff walked to the edge of the pool, observed Mrs. Thornton and his sister near each other in water up to their shoulders, whereupon he dived in to the pool near them. In this dive, plaintiff struck the bottom incurring injuries to his head and cervical spine.
Mrs. Thornton testified that because of the chill of the night air she had squatted in the water to keep warm, and apparently plaintiff's sister had done likewise. The water at this place was actually about three and one-half feet deep.
Plaintiff testified he had never been in swimming in this particular pool before; that ordinarily swimming pools have a deep end and a shallow end and the end opposite from the one into which he dived was the deep end; that he thought the pool was deep enough to dive into where he saw Mrs. Thornton and his sister; that they appeared to him to be standing in the water with the water almost up to their shoulders; that he made no inquiry or investigation as to how deep the water was where he dived; and that he did not notice any depth markers nor did he look for any.
Plaintiff, in his petition, alleged the accident and resulting injuries were proximately caused by defendants failing to design and construct the pool in accordance with requirements of the Louisiana State Board of Health, and particularly in failing to install depth markings; in failing to obtain a permit and the approval from the City of Baton Rouge of the plans and specifications for the construction of the said pool; in failing to provide adequate lighting; in failing to provide depth markings, adequate warnings, signs or other precautions for the proper and safe use and operation of the pool; failing to provide lifeguards at time of the accident; and in failing to design, construct and operate said swimming pool in accordance with good and sound safety precautions.
The answer of each defendant is practically the same in that each deny any actionable negligence, and alternatively plead contributory negligence on the part of the plaintiff.
After trial on the merits in the lower court, the trial judge found the proximate cause of this accident was the plaintiff's contributory negligence. On this basis, the defendants' plea of contributory negligence was maintained and plaintiff's suit dismissed at his costs.
We concur with the trial judge in his holding the negligence of the plaintiff was the proximate cause of the accident. The testimony is replete with numerous statements of the plaintiff that he made no *854 effort to determine the depth of the water where he dived.
In his brief, the plaintiff sets forth four specifications of error of the trial court. We list them here.
I. The court erred in not specifically finding that the plaintiff enjoyed the status of an invitee on the premises of the Continental Hotel Corporation. II. The court erred in failing to determine that the omission of depth markers in the pool or other warnings for those using the pool at night constituted actionable negligence. III. The court erred in failing to determine that the structural defect of the pool was a proximate cause of plaintiff's injuries, and erred in determining that the injuries were caused by the negligence of plaintiff. IV. The Court erred in failing to award damages to the plaintiff.
In view of our finding herein we will not consider the fourth specification of error. We will discuss the second and third as one specification.
We have no hesitancy whatever in finding, and do so hold herein, the plaintiff was an invitee on the premises of the defendant, Continental Hotel Corporation. He was on the premises as a customer of the defendant hotel corporation in the course of enjoying the purposes of the transaction. It is not contended by any of the defendants that plaintiff had any other status than that of a business invitee. Naturally, the question arises as to the duty owed to plaintiff as an invitee. The defendant owed him the duty to exercise reasonable care for his safety and to maintain the premises "in a reasonably safe condition for use in a manner consistent with the purpose of the premises." Peters v. Great Atlantic & Pacific Tea Co. (La. App.1954) 72 So.2d 562, and the cases cited therein.
Plaintiff cites the case of Alexander v. General Accident Fire & Life Assur. Corp. (La.App.1957) 98 So.2d 730, 732, for definition of an invitee, and we quote approvingly of what this court said in that respect:
"(3) An invitee is a person who goes on the premises with the express or implied invitation of the occupant on the business of the latter or for their mutual advantage; and to him, the duty owed is that of reasonable and ordinary care, which includes the prior discovery of reasonably discoverable conditions of the premises that may be unreasonably dangerous, and correction thereof or a warning to the invitee of the danger."
Aside from the question of the status of the plaintiff about which there is no dispute between the parties, the real question to be answered is what was the proximate cause of the injury? Was the proximate cause of the injury the absence of the depth markers along the edge of the pool, or was it the lack of attention of the plaintiff to the depth of the water in which he dived?
Even assuming arguendo, defendants were negligent in the construction of the swimming pool and in their failure to install depth markers, before liability attaches for such negligence, these acts of negligence must bear a relationship to the injuries received as to be adjudged the proximate cause or a proximate cause of the injury. The proximate cause, the act in closest proximity to causation, is the negligence of plaintiff in diving, head first, into water of unknown depth without first ascertaining the safety of such act. There is no casual relationship between the absence of depth markers and the injuries sustained. Plaintiff testified he did not look for any depth markers. He erroneously assumed the water was deep enough to sustain his dive because he saw his sister and Mrs. Thornton in water up to their shoulders.
Although plaintiff does not set forth this as a specification of error, he makes this argument in his brief:
"Further, Mr. W. L. Bowman of the City-Parish Department of Public Works, *855 Building Inspection Division, testified (R-151) that no permit had been issued for the construction of a swimming pool at the Continental Motor Hotel. This is additional indication of the failure of the parties to properly comply with the regulations concerning the construction of a swimming pool available to the public."
With even greater force we hold there is no causal relationship between the cause of injuries of plaintiff and the lack of a permit of the City-Parish government for the construction of the pool.
The plaintiff has cited us no prior adjudication of any court of this, or any other state, which sustains his position.
The holding of the court in Chauvin v. Atlas Insurance Company (La.App.1964) 166 So.2d 581 is appropos to the facts of the instant case. In the Chauvin case, the plaintiff was injured when he made a long dive off a diving board, overshot the diving well and struck his head on the bottom of the pool. In holding for the defendant, the court stated on page 584:
"The plaintiff had never been in this pool before and his initial entry into the water was in the ill-fated dive. By his own admission he attempted a long dive, about 15 feet from the end of the board, to a point where his host was standing. His explanation for this was that he thought Mr. Arlt was treading in deeper water. We agree with the trial judge that the plaintiff was negligent in the manner in which he entered the water without first having made more reasonable inquiry, or better still an investigation by first entering the pool in a safer manner.
* * * * * *
"Whatever hazard might have existed as a result of the alleged improper construction of the pool was not shown ever to have caused injury before to persons who used it with ordinary care. The plaintiff has failed to show by a preponderance of the evidence that the proximate cause of his injury was the hazardous construction of the pool. It is our opinion that the plaintiff must bear the responsibility for his own careless and negligent act which caused his injury."
The instant case is factually stronger for the defendants. Here the plaintiff was diving from the side of the pool, a place not provided for such a dangerous undertaking. It behooved the plaintiff to be certain the dive could be executed safely from his chosen place, and in the absence of making a simple determination of this fact, he must bear the sole fault for the error.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
Affirmed.